Next case, call for oral argument with People v. Etherton. Counsel, whenever you're ready, you may proceed. Good afternoon, Your Honors. May I please the Court and my colleagues from the State? My name is Dean Bars and I'm the Office of the State Appellate Defender on behalf of Mr. Etherton. Article I, Section 11 of the Illinois Constitution mandates that criminal penalties are to be set according to the seriousness of the crime and with the objective of restoring that offender to his citizenship. That obligation is incumbent on all parts of our judiciary, not just the Circuit Court. So in furtherance of that, Mr. Etherton has raised two arguments in his brief. First, that the Abuse of Discretion standard on a new sentencing hearing should be abandoned. And secondly, that under any standard, this sentence was excessive and the Circuit Court should either deactivate the sentencing hearing or this Court should reduce this sentence. Are you arguing it should be abandoned or it should be expanded? Abandoned. Abandoned. We should adopt a new standard. On that topic, Your Honor, in People v. Periquet, the dissent observed that the standard of reviewing sentences for an Abuse of Discretion cannot be reconciled with Article I, Section 11. And that is because Abuse of Discretion limits review to the narrow question of whether the Circuit Court abused its discretion. Or in other words, if reasonable people can disagree that the Circuit Court did not abuse its discretion. And that dissent reasoned that we should use a broader standard and decide whether or not a sentence conforms with constitutional guidelines, namely Article I, Section 11. Does this sentence further the objective of restoring this person to useful citizenship? Not just did the Circuit Court exercise a reasonable interpretation of whether this sentence conforms to that objective. And I'd like to note that we began using Abuse of Discretion in sentencing over 100 years ago. And at that time, the Illinois Constitution made no reference to rehabilitation. The 1870 Constitution said that penalty shall be apportioned according to the nature of the offense. And that was it. Our founding document of our state did not pay any attention to rehabilitation. Our society and our government have changed. They now say that rehabilitation is a fundamental part of why we incarcerate people, to restore them to citizenship. And to that end, I think it's important to point out that if you're only haggling over whether a sentence is punishment enough, that doesn't need as much scrutiny. But when we're saying we're depriving a person of their liberty, and part of the reason we're doing that is to ensure that they can return to citizenship, that warrants much more scrutiny. The second reason the standard should be abandoned is because it is inconsistent with simply the gravity of sentencing a person, depriving them of their liberty, depriving them of families, careers, et cetera. And the point that illustrates this best, I think, is the fact that the standard we use now to decide whether Mr. Edenton's sentence is excessive is the same standard we use to decide whether a circuit court's decision to bar a defendant from wearing make-up to cover up tattoos, those are the same standard. Just like we use abuse discretion. What? What are you talking about? If a defendant asks to use make-up to cover up tattoos for trial, that decision is reviewed for abuse of discretion. Just like how long we're going to deprive a person of their liberty. Just like we use abuse of discretion for discovery sanctions or class action certification. Not only are these incongruent, but one of them has a constitutional mandate behind it. But even if your honors disagree that we should change the standard of review, under any standard, Mr. Edenton's sentence was excessive. And we, simply because the circuit court did not properly consider all of the aspects of his life and how he reached the point he's reached. And we know that rehabilitation should consider a person's social background, their education, substance abuse history, and other factors like that. So to understand where Mr. Edenton came from, it's important to, or to understand how we got where he is today, it's important to examine his history. And at the age of 12, Mr. Edenton began receiving court-ordered psychological counseling. Let me ask you this. You very well outlined in your brief all of those factors when you read the brief. Are you, two questions, are you asking us to re-weigh these factors along with the aggravating factors? And isn't the circuit judge, excuse me, the sentencing judge in a superior position to weigh those factors? Not just what's in print, but review of the defendant, victims, whatever, whatever relevant factors are appropriate. I would agree with Your Honor that sentencing courts are in a better position to weigh some things like the demeanor of the defendant or his credibility, things like that. But the point that Mr. Edenton's argument makes is that those are the, those are more insignificant. Those are insignificant compared to the objective things that this Court has access to, such as the pre-sentence investigation report, which is intended to contain everything necessary to sentence a defendant. His social history, his mental and physical health, his family history, his education, his criminal history. And on top of that, the factor, the facts of the offense themselves are the most important thing when sentencing a defendant. Are you saying that Judge Schwartz did not do that? That he didn't take into account all of the growing up and childhood history in the PSI? That is my position, yes. And he does not address it. And he does note that Mr. Edenton has supportive people in his life. But the things he doesn't note at all are things like the fact that Mr. Edenton's intellectual functioning is in the lower borderline range or that he suffers from a developmental disorder that prevented him from, as Dr. Keller put it, and I want to make sure I get this right, he had a significant disadvantage responding to social demands, and he struggles to make appropriate social choices without experiencing things multiple times. And in other words, what that means is he struggles to comprehend the world and interact with his world in a way that I think many of us have never experienced and have trouble understanding. And those things were not considered. The trial court also made a comment that Mr. Edenton had not changed. And I think that reflects the fact that the circuit court did not consider many of the things that Mr. Edenton has done to overcome the struggles he had in his childhood. Despite the fact that he spent many of his formative years in either IBOC custody or in DCFS custody, he went on to obtain his GED. He still desires to further his education. Prior to the incident offense, he was gainfully employed in multiple jobs. He had obtained a certificate. But he didn't have continuous employment in his jobs. That's true. But those things do reflect that he has continually made an effort to better himself compared to where he started from. And what I mean by that is Mr. Edenton has been playing catch-up his entire life. He started from a place that most people never start from. And it's important that we measure not just where he is but how he got there. And the circuit court did not consider a number of things, including while it acknowledged his support of family, it did not acknowledge that simply leading up prior to the incident offense, this was the first time in his life where he really had a positive, loving, caring family structure. And the record is replete with attestations from family and friends that say he's a caring, generous, selfless human being. The difficulty is that he struggles with mental deficits that genuinely impact his ability to interact in the world and make appropriate choices. But the important thing is he's been working on that, and the record represents that. And for all those reasons, I would suggest to this Court that his rehabilitative potential was not adequately considered. Let me ask you this. Your argument basically is grounded on Paragraph and the factors in that, both the majority and the dissent. Assuming for the sake of argument that we agree, as a panel with the dissent, what are your thoughts about the position of this Court, an appellate court, as opposed to the Supreme Court, which issued Paragraph? If I understand you, your question is about starting a thesis? Yeah. That's a very good question. We're bound by what the Supreme Court says. Whether we question it, totally agree with it, or think it's off base. Well, I have two responses to that. The first is our Supreme Court has said that starting a thesis is not an extra burden. Right. Go ahead. That wasn't for emphasis. You can answer the question. Well, I agree with Your Honor generally that appellate courts are bound by Supreme Court precedent. Our Supreme Court itself has said that that is not an inexorable command, and that precedent may be departed from when it's in the public interest or when the previous president no longer serves that interest. But alternatively, if Your Honors should, say, agree with me that the standard should be abandoned, we should adopt a less deferential standard, then clearly I have a longer road to walk. But certainly the nature of starting a thesis is not immutable. Does that answer your question? Yes, it does. Okay. If Your Honors have no other questions. I don't believe we do. Thank you, counsel. Counsel? May it please the Court? Counsel, Chelsea Casten on behalf of the State. Your Honors, the abuse of discretion standard remains well-settled mandatory authority, and the sentence imposed by the trial court was a just sentence well within the range of a class X felon. Let me ask you the flip side of the question I asked your opposing counsel. Let's say we look at the controlling opinion, the parapet, and the dissent, and we decide, you know, obviously the majority controls, but reading the majority opinion, we are not precluded from expanding, along with abuse of discretion, to the other factors mentioned in the dissent. What is your position on that? Do you think we can do it? I know you're going to say we shouldn't do it because the standard you're advocating is abuse of discretion. What I'm asking is, don't you think the appellate court could do that? Your Honor, could the court do it? It could certainly try. However, it would have to do so with great caution. Were you to send it down to the lower court, not only would it start to question the lower court's ability in sentencing, but there's also the potential where every defendant in the State starts to attempt to have their own cases addressed. We went through that with Apprendi and some other cases. What I'm saying is, if we were to say, no question abuse of discretion is the applicable standard, but the opinion does not preclude consideration of these other factors, and we think that they should be, and remanded for that. That's really the gist of my question and what your reaction is to that. Not a declination to follow the Supreme Court opinion, but saying these other factors are reasonable expansions on what a trial judge in a sentencing capacity should look at. Yes, Your Honor, you could say that. However, there's been no indication from the Illinois Supreme Court that it personally feels like that would be necessary. This is a standard that has been around for a very long time, as you'll see in our briefs, and there's every indication since even the 1970 amendment to the Constitution that it still addresses both the dual purpose of punishment and rehabilitation of defendants into society. Particularly in this case, Your Honor, there really isn't anything in the record to suggest that the judge didn't consider multiple factors in his sentencing. In fact, the record shows he did spend a good deal of time speaking with defendants. I think what he meant in speaking to him not getting it, this is his sixth residential burglary conviction among a long list of other convictions. I believe what the court meant was he's not understanding the difference between right and wrong, and at some point, despite doing everything possible, giving him all these resources to try and help him be rehabilitated back into society, the defendant is just not getting it. He continues to break the law. He continues to show a disregard for other people's property, for the sanctity of their homes, and it's just, there's nothing in the record to show that this court would need to stray from a standard that is well established and serves a good purpose. As you noted, Your Honor, there are things that the reviewing court just can't recreate for a full record. We can't see what his demeanor was. We can't see what his facial features were. There's just so much that you can't recreate that even if the reviewing court did feel that it would have sentenced him differently, that alone is not a sufficient reason. I'm not asking, I would never ask that we re-weigh what the circuit court did in sentencing. I mean, I was in a sentencing position. I don't think I would have wanted the appellate court to tell me to re-weight it and you're wrong. What I'm asking is your position as far as expanding other factors to be considered along with what's mentioned in paraphrase. I would say, Your Honor, it's fully unnecessary at this point. Again, there's just nothing to suggest that the standard as it exists is failing the purpose that it is to serve. An abuse of discretion was created because the Supreme Court recognized the superior position of the trial court in sentencing. And given the limited ability to review a case, the abuse of discretion is the most common sense and fair method of reviewing a sentence, Your Honors. If you don't have any more questions about abuse of discretion, I'll move on to the excessive sentences. I don't believe we do. In looking to the defendant's sentencing, the trial court felt that the defendant lacked rehabilitative potential, particularly in light of the defendant's excessive criminal background beginning at the age of nine leading all the way to the present day. In determining a sentence, the trial court is not required to consider rehabilitative potential as a greater factor than the seriousness of the offense. In this case, the victim is an elderly widow who lives on her own who now feels as if she is constantly being watched and she now suffers from extreme anxiety as a result of the residential burglary, which Your Honors will know in her victim impact statement. Well, that's one thing I just want to ask State, because I think the defendant claimed that, well, there was no personal injury involved. Nobody was hurt. And I think that's really short-sighted. Everybody's hurt when they're a victim of a crime. And I just don't know how the defendant can take that position in any case like this, whether it's – I mean, I don't think you have to be struck with a weapon or shot or hit with a knife in order to suffer personal harm. One thing that struck me is the defendant didn't seem to get that, or maybe his lawyer didn't. I don't know. But I thought that this judge did take into consideration many of these factors. This defendant, as I understood it, had jewelry hanging from the mirror of his truck and still denied that he was involved. Is that right? Yes, Your Honor. I believe it was a necklace that was hanging from the mirror as well as more jewelry that was in a bag on the floor of the vehicle, I believe. And you're absolutely right. The state would argue that psychological trauma can be just as damaging as physical. Again, she's suffering from anxiety. She lives alone. She also said in her victim impact statement that she won't even open up her door unless she specifically knows who the individual is on the other side. So absolutely, psychological trauma is something to consider. And it would appear that the trial court did consider that in determining the sentence. What is the minimum sentence for a class act under this? Your Honor, it would be six years. Six. So the trial court settled just around the middle, up to 30 years. In this case, the defendant was sentenced to 20 years. Your Honors, although the defendant did have a poor childhood and substance abuse issues, this was not his first residential burglary conviction. It's his sixth. When you look at the record, you'll see an extensive criminal background. And given the nature of the offense, the trial court was well within its discretion to sentence the defendant to 20 years. As it ultimately did. He's had every opportunity to turn his life around. He's been given access to programs within DOC. And he continues to break the law as soon as he gets back out. But he was on probation during this burglary, wasn't he? Yes, Your Honor. He was on supervised release from federal court for manufacturing of methamphetamine. And he also had a pending case in Williamson County for possession of methamphetamine. So, the court has no more questions? I don't think so. We would ask you to affirm the sentence. Thank you. Thank you, counsel. Counsel? I have a couple brief points I'd like to make. The first is my colleague said that the record doesn't show that the circuit court didn't consider some of these things. And I think the state has pointed out one of the problems with the abuse of discretion standard, which is we presume that the circuit court hasn't done these things. And removing the standard and using a less differential standard, we would not have to wonder anymore, really, whether these things have been considered because they hadn't been mentioned. Right now, we're forced to ask, if the circuit court does not mention that Mr. Etherton suffered from a developmental disorder, we have to wonder, did the circuit court consider that or not? We're presumed, it's presumed to have, but we cannot know. And if we use a less differential standard, we no longer have to wonder because this court can consider it on its own. So, you're asking this court to now put itself in the place of the trial court. That's what ultimately you want us to do, by expanding, as Justice Goldinghurst says, we're expanding the rule, not abandoning the abuse of discretion. In a way, yes. That takes me back to one of my original points, which was a lot of the things that I am asking this court to consider are things that don't have anything to do with weighing the defendant's credibility, weighing the testimony of a victim impact statement. These are things that are objective in the PSI. This court has the same access to them as the circuit court. Why wouldn't we consider a victim impact statement? I'm not saying you shouldn't, Your Honor. Oh, I thought you did. No, what I'm saying is, for example, a victim impact statement that ends up in the PSI, that isn't read by the victim at the sentencing hearing, it's just on paper. This court can access that the same as the circuit court. There's no need to defer to the circuit court's judgment simply because it was the circuit court. That leads me to another point, which was the state said that the Supreme Court hasn't indicated that it wants to move away from the stand. And that's true. But other appellate courts have indicated some desire to see some sort of change in the way we sentence defendants. For example, in the first district, there was a dissent that said we should require circuit court judges to state on the record specifically how they arrived at a particular number for a sentence. Which, while the statute says that, it's not mandatory. They do not have to comply with that. And it would offer more transparency. This is simply another way of attaining a similar effect. That was a dissent. Yes. Because you started out by saying other courts have indicated their desire to move away from it. That's not a court saying that. That's one judge, a minority. That is right. It's an appellate court justice. But it shows that this is not an isolated sentence, that we are asking for sentencing reform. And that, I'm sorry. Go ahead. And people in this state have been clamoring for some sort of sentencing reform when it comes to particularly sentences for nonviolent offenses. This is just another way for our justice system to act and create more oversight and eliminate the problem of abuse of discretion, which is we only ask, can reasonable people disagree? Is this a sentence that will truly conform to the objective of restoring this person's citizenship? Do you think an appellate court is in a similar situation and has a similar capacity to consider all of these factors as a circuit court would? The factors that are objective and equally as accessible, yes. So in other words, we can figure out what's in a PSI. We can figure out, we can read a victim impact statement, and therefore, we can weigh these just as well as a circuit court, that is, the sentencing court? Yes. For example, the treatment notes from Dr. Kellogg, which are in the PSI. Dr. Kellogg did not testify at the sentencing. This is purely his notes that were from Mr. Ethikon's childhood treatment. Those are equally as accessible. This court can read those just the same as the circuit court. I'm not talking about accessibility. I'm talking about considering and weighing them. Do you think that we are in a position, equivalent position, to consider and weigh these as would be the sentencing court, the circuit court? If the current standard of review is eliminated, yes, which is my overarching point. Currently, the abuser discretion standard prevents this court from re-weighing a lot of those things. And we only ask, did the sentence that the circuit court imposed, was that a, essentially we ask, was that a reasonable interpretation of Article I, Section 11 and pursuing this objective for restoring a person to citizenship? And my ultimate request to this court is that we do away with that and we ask, not was that a reasonable interpretation, but does this sentence conform with Article I, Section 11? Does it further the goal of restoring this person to society? I have one question for you. Was there any live testimony in this case? At trial, was it, Senator? At trial? Yes. By whom? A number of people, the officers, and I believe the victim did as well. My memory fails me. How about at sentencing? I believe Mr. Eden's mother testified, and I believe that was in all evidence. Didn't the defendant testify in this? At trial? No, at sentencing. No, at sentencing. I believe he, yeah, I mean, he gave allocution. Yes. But according to that, I would ask Your Honors to either reduce Mr. Eden's sentence or remand for dissent. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel and take the case under advisement. There are no further oral arguments scheduled before the courts in the hearing.